# No. 25-40286

### In the United States Court of Appeals
### For the Fifth Circuit

**JAMES GEORGE,**

*Plaintiff – Appellant*

**v.**

**SI GROUP, INCORPORATED,** *doing business as* **SCHENECTADY INTERNATIONAL, INCORPORATED; BRENNER TANK SERVICES, LLC;** AND **BULK SOLUTIONS, LLC,**

*Defendants – Appellees*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF TEXAS, GALVESTON DIVISION;
NO. 3:21-CV-360

## BRIEF OF APPELLANT

**ARNOLD & ITKIN LLP**

Roland Christensen
6009 Memorial Drive
Houston, TX 77007
(713) 222-3800 *Telephone*
rolandteam@arnolditkin.com

**BECK REDDEN LLP**

Russell S. Post
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
rpost@beckredden.com

**Attorneys for Appellant**

## No. 25-40286

# In the United States Court of Appeals
# For the Fifth Circuit

---

**JAMES GEORGE,**

*Plaintiff – Appellant*

**v.**

**SI GROUP, INCORPORATED,** *doing business as*
**SCHENECTADY INTERNATIONAL, INCORPORATED;**
**BRENNER TANK SERVICES, LLC;** AND
**BULK SOLUTIONS, LLC,**

*Defendants – Appellees*

---

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF TEXAS, GALVESTON DIVISION;
NO. 3:21-CV-360

---

### CERTIFICATE OF INTERESTED PARTIES

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    **Plaintiff-Appellant**:

James George

2.    **Defendants-Appellees**:

SI Group, Incorporated, doing business as Schenectady International, Incorporated; Brenner Tank Services, LLC; Bulk Tank Solutions, LLC

3.    **Counsel for Plaintiff-Appellant**

Roland Christensen of Arnold & Itkin LLP

Russell S. Post of Beck Redden LLP

4.    **Counsel for Defendants-Appellants**

Jessica Z. Barger, Esam Al-Shareffi, and Brian James Cathey, Wright Close Barger & Guzman LLP

Michelle Rose Meriam Blair and Paul William Smith, Ware, Jackson, Lee, O'Neill, Smith & Barrow, LLP

Dennis Robert Callahan, Freeman, Mathis & Gray, LLP

Kristina Marie Williams, Norton, Rose Fulbright US, LLP

*/s/ Roland Christensen*
Roland Christensen
***Lead Attorney of Record***
***for Plaintiff-Appellant***

iii

## STATEMENT REGARDING ORAL ARGUMENT

Although the district court committed multiple errors that are readily apparent on the face of the record, Appellant believes oral argument would help the Court understand the theories of liability against the Appellees and would also assist this Court in fashioning guidance for the district court on remand.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................................ II

STATEMENT REGARDING ORAL ARGUMENT.................................................IV

TABLE OF CONTENTS.................................................................................V

TABLE OF AUTHORITIES......................................................................... VII

STATEMENT OF JURISDICTION ...................................................................X

ISSUES PRESENTED .................................................................................XI

INTRODUCTION........................................................................................ 1

STATEMENT OF THE CASE..........................................................................3

    I.     Factual Background ....................................................................3

        A.    A full tanker trailer tips over, spilling hot water onto George..5

        B.    Post-accident investigations confirmed the alleged "Root Causes" of the Incident..............................................................8

    II.    Procedural History .....................................................................10

SUMMARY OF THE ARGUMENT ..................................................................14

ARGUMENT............................................................................................16

    I.     The district court erred in granting summary judgment for SI Group. ........................................................................................16

        A.    Standard of review.................................................................16

        B.    SI Group's knowledge of a dangerous condition precluded summary judgment on George's premises-defect theory.........17

        C.    Summary judgment was also improper because SI Group controlled the activity that caused George's injuries. .............25

        D.    The district court erred by excluding George's liability expert's

opinions.................................................................................28

II.    The district court erred in granting summary judgment for Bulk Solutions and Brenner Tank. ....................................................34

   A.    Material issues of fact existed on George's marketing-defect / failure-to-warn claim. ...........................................................34

   B.    Fact issues likewise existed on George's design-defect claim. 37

CONCLUSION .................................................................................39

CERTIFICATE OF SERVICE .........................................................41

CERTIFICATE OF COMPLIANCE ..................................................42

## TABLE OF AUTHORITIES

<u>CASES</u>

*Benavides v. Cushman, Inc.*
    189 S.W.3d 875 (Tex. App.—Houston [1st Dist.] 2006, no pet.) . 34, 36

*Bristol-Myers Co v. Gonzales,*
    561 S.W.2d 801 (Tex. 1978) ..............................................................34

*Bustamante v. Ponte,*
    529 S.W.3d 447 (Tex. 2017) .............................................................39

*Coastal Marine Serv. of Tex., Inc. v. Lawrence,*
    988 S.W.2d 223 (Tex. 1999) .............................................................19

*DeGrate v. Exec. Imprints,*
    261 S.W.3d 402 (Tex. App.—Tyler 2008, no pet.) ...........................34

*Duncan v. First Tex. Homes,*
    464 S.W.3d 8 (Tex. App.—Fort Worth 2015, pet. denied).................19

*E.I. DuPont de Nemours & Co. v. Roye,*
    447 S.W.3d 48 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) 23

*Emerson Elec. Co. v. Johnson,*
    627 S.W.3d 197 (Tex. 2021) .............................................................37

*Genie Indus., Inc. v. Matak,*
    462 S.W.3d 1 (Tex. 2015) .................................................................37

*George v. SI Grp., Inc.,*
    36 F.4th 611 (5th Cir. 2022) ...................................................... 11, 21

*Gifford v. Wichita Falls & S. Ry. Co.,*
    211 F.2d 494 (5th Cir. 1954).............................................................22

*Henkel v. Norman,*
    441 S.W.3d 249 (Tex. 2014) ...................................................... 20, 25

*Hernandez v. Amistad Ready Mix, Inc.,*
    513 S.W.3d 773 (Tex. App.—San Antonio 2017, no pet.).................26

*Hernandez v. Tokai Corp.*,
  2 S.W.3d 251 (Tex. 1999) ................................................................. 38

*Manning v. Walgreen Co.*,
  638 F. Supp. 3d 730 (S.D. Tex. 2022) ........................................ 32, 33

*Payne v. Wal-Mart Stores Tex., LLC*,
  No. MO:18-cv-00224, 2020 WL 4718056 (W.D. Tex. June 23, 2020) 32

*Pipkin v. Kroger Tex., L.P.*,
  383 S.W.3d 655 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)
  ............................................................................................................ 19

*Pye v. Oil States Energy Services, LLC*,
  233 F. Supp. 3d 541 (W.D. Tex. 2017) ............................................. 17

*Ramirez v. Landry's Seafood Inn & Oyster Bar*,
  280 F.3d 576 (5th Cir. 2002) ............................................................ 23

*Redinger v. Living, Inc.*,
  689 S.W.2d 415 (Tex. 1985) .............................................................. 25

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000) ........................................................................... 17

*Ritz Car Wash, Inc. v. Kastis*,
  976 S.W.2d 812 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) 35

*Rushing v. Kansas City S. Ry. Co.*,
  185 F.3d 496 (5th Cir. 1999) ............................................................ 30

*Sanchez v. Young County*,
  956 F.3d 785 (5th Cir. 2020) ............................................................ 16

*Shell Chem. Co. v. Lamb*,
  493 S.W.2d 742 (Tex. 1973) .............................................................. 20

*United States v. Hicks*,
  389 F.3d 514 (5th Cir. 2004) ............................................................ 30

*Viterbo v. Dow Chem. Co.*,
  826 F.2d 420 (5th Cir. 1987) ............................................................ 30

viii

*Williams v. Manitowoc Cranes, LLC*,
　898 F.3d 607 (5th Cir. 2018) ............................................................. 30

*Wilson v. City of Southlake*,
　No. 21-10771, 2022 WL 17604575 (5th Cir. Dec. 13, 2022) .............. 23

**STATUTES**

28 U.S.C. § 1291 ....................................................................................... x

28 U.S.C. § 1332 ....................................................................................... x

**RULES**

Fed. R. Evid. 704(a) ............................................................................... 29

**TREATISES**

RESTATEMENT (SECOND) OF TORTS § 414 ................................................. 25

## STATEMENT OF JURISDICTION

The district court had diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff-Appellant James George is a citizen of Texas and the Defendants-Appellees are all citizens of other states. ROA.109-10, 124, 718, 1809-44.

The district court entered its final judgment on April 17, 2025. ROA.12791. George filed a timely notice of appeal on May 16, 2025. ROA.13067. Accordingly, this Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.    Did the district court err when it granted SI Group, Inc.'s motion summary judgment on reconsideration where facts in the record—that on summary judgment must be taken in the non-movant's favor—support George's premises-liability claim against SI Group and did it err when it excluded testimony from George's expert that also raised fact issues on the same claim?

2.    Did the district court err in granting Bulk Solutions, LLC's and Brenner Tank Services, LLC's joint motion for summary judgment where genuine issues of fact exist on George's product-liability claims against these Defendants-Appellees?

## INTRODUCTION

The parties have litigated this case substantially for years. And as a result, one thing is clear: there are substantial disagreements about the underlying facts and the weight that a jury will place on certain facts. Because of that, one thing is also clear: summary judgment is not the appropriate resolution of this case.

Respectfully, the district court erred when it improperly weighed (or ignored) key facts, did not resolve disputed facts in George's favor, and ultimately granted summary judgment on George's claims. This Court should overturn the orders and remand the case for a full trial on the merits to have a jury weigh the facts and bring final resolution.

The facts, viewed in the light most favorable to the non-movant (as summary judgment requires), are that Plaintiff-Appellant James George was injured when a tanker trailer tipped over and filled the truck cab where George was sitting with scalding hot water. The water severely burned approximately 40% of George's body before he could escape the cab through an open window.

***Premises Liability.*** It is undisputed that the trailer tipped over because it was staged on unstable ground. There are issues of fact that

1

should have precluded summary judgment for SI Group as to who knew that the staging area was unsafe, who controlled the area and the work, and who was responsible to warn of the dangerous condition.

Much of the briefing has focused on whether a water leak caused the dangerous condition. But testimony also shows that SI Group's permit issuer knew that (whether there was a leak or not) the ground was so unstable that a trailer parked there would tip over within minutes. In other words, there are multiple scenarios at play, but the evidence is clear: there are fact issues on George's premises liability claims—that on a previous appeal this Court instructed must be analyzed under a common-law, constructive-knowledge standard—and the claims should not have been dismissed. This Court should reverse.

***Products Liability.*** The same errors color the district court's order granting Bulk Solutions' and Brenner Tank's joint motion for summary judgment. As to these claims, the evidence showed that Veolia's workers (1) were not warned and (2) would have heeded a warning if given the chance to read one. George also offered extensive expert evidence that the trailer was dangerously designed. Yet the district court ignored much of George's experts' opinions and otherwise, again, weighed the evidence

2

as factfinder.

On summary judgment, George only needed to raise fact issues on his design defect claims. He did so, and the district court's order dismissing George's claims against Bulk and Brenner was error. This Court should reverse that order and remand the case for a trial on the merits that includes George's claims against Bulk and Brenner.

## STATEMENT OF THE CASE

### I.   Factual Background

This case arises out of an industrial incident that occurred on August 15, 2016, where Plaintiff-Appellant James George suffered severe burns over much of his body. ROA.3522. SI Group hired Veolia—George's employer—to perform a hot water wash at SI Group's facility. ROA.3519-21. The process required the use of industrial cleaning equipment and repeated, often multiple-day washing. ROA.1000. Workers needed two specific pieces of portable equipment for the job—a hot water tanker trailer and a vacuum truck. ROA.998.

Given the need to wash the tank repeatedly over several days, the hot water tanker trailer would run out of water at least once a day. ROA.999. To compensate, SI Group always had "2-3 tank wagons" of 200-degree water at the ready—one that was used alongside the vacuum

3

truck to clean the tanks, with another, full tanker trailer standing by. ROA.1310, 1448. When the first one runs out of water, a tractor pulls it aside, hooks to the second trailer, and pulls the second trailer over to the "Staging Area" so the wash can continue. The first, now empty trailer, is then "re-filled and left to steam overnight," unsupported by a tractor. ROA.1310, 1448.

Each trailer is equipped with "legs" or "landing gear," which are meant to support the trailer's entire weight when not connected to a tractor. Because the job site always had two trailers and only one tractor, one of the trailers—whether full of water (pre-wash) or empty (post-wash)—was always supported by the landing gear alone. ROA.1310. At the SI Group site, it was considered "standard operating procedure" to "unhook" the hot water trailers from the tractor and "drop the tanker" onto its legs. ROA.1216, 1217; *see also* ROA.1227, 1310, 1448.

Per SI Group's permitting procedures, before Veolia could perform any work at SI Group's facility, it needed a "permit." ROA.1438. The primary purpose of SI Group's procedures was to "prevent accidents." ROA.1384, 1535. To that end, SI Group strictly defined the "scope" of Veolia's work and required Veolia to operate in a designated area.

4

ROA.1438, 1385, 1535. The purpose of the permitting process was to "identify hazards that might be associated with" the specific job for which the permit was granted. *Id.* The rationale for SI Group's strict control of its site was simple: as the owner of the premises, "SI Group is in the best position to ensure that the area where the independent contractor is working is free from safety hazards." ROA.1535. As the owner, SI Group was "uniquely aware of other contractors' activities on site" and knew about any "changing conditions" that it "factor[ed] . . . in when issuing permits" to its contractors. ROA.1535. Hazards that SI Group should have identified included the unstable staging area. ROA.3661, 3871-72. Said another way, SI Group should have checked to ensure that the staging area was safe and the ground solid enough for Veolia to park the trailers there before issuing the permit and instructing Veolia to use the gravel staging area. ROA.3661-62, 3666. Any hazards, including unstable ground, should have been listed on the permit. ROA.3668, 3771-73.

### A. A full tanker trailer tips over, spilling hot water onto George.

On the date of the incident, George and the other Veolia contractors went to the SI Group permit shack to receive their permit and discuss the day's work. ROA.3540. SI Group employee, Reginald "TK" Hall issued

the permit. ROA.3661. Before the permit was issued, Veolia and SI Group workers did a morning walk-through where SI Group identified and dictated "where exactly [Veolia] ha[d] to stage [its] vehicles." ROA.3553, 1249. As it had on previous jobs, ROA.1216, 1295, SI Group directed the Veolia contractors to park the tanker trailer and vacuum truck at the end of a long gravel alleyway. ROA.3596.

While the parties were taking the morning walk-through, George noticed that there was already a trailer staged in the area. ROA.3553. He was not surprised to find a full hot water tanker trailer in the staging area resting on its landing gear waiting for use. ROA.1227, 1217, 1250. The SI Group permit issuer, TK Hall, ignored it entirely. ROA.3553. That said, George expected SI Group to inform him of any issues with the staging area. ROA.1227, 1217, 1250. As it had multiple times before, Veolia relied on SI Group to point out any potential hazards onsite. ROA.3910.

On the day of the incident, Veolia followed SI Group's instructions precisely, as required by the work permit. ROA.1249, 1216, 1535, 1536. Importantly, during the pre-work inspection of the Staging Area, the gravel surface appeared dry to the naked eye. ROA.938, 1294, 1312.

6

Right before the incident, the trailer next to the vacuum truck ran out of water. ROA.3540. Veolia then switched out the empty trailer for a full one. *See id.* As it did, Veolia discovered an issue with one of the airbags on the tractor, so Veolia unhooked the trailer and staged it on the landing gear—just like it had done before. ROA.1550. George helped unhook the hoses from the trailer and then sat in the cab of the truck nearby. ROA.1562. Soon after, the trailer tipped over spilling water into the cab of the truck. ROA.3540. George lifted his legs to avoid the scalding water, then realized that the entire cabin was about to flood so he "dove out the window of the truck," ROA.1150, falling several feet to the ground. The photo below shows the immediate aftermath of the scene:



ROA.1198.

Eyewitnesses recalled that George was "screaming help me" while he was running around and attempting to tear off his clothes. ROA.1152, 1154, 931, 997. The water caused second and third-degree burns over around 40 percent of George's body. ROA.3548. When a trolley arrived to take George to the ambulance, SI Group's safety personnel had to lift him "from the bottom of his feet" because his "skin was coming off." ROA.1149.

### B.    Post-accident investigations confirmed the alleged "Root Causes" of the Incident.

In the aftermath of the incident, both SI Group and Veolia investigated the causes of the incident. The SI Group Root Cause Analysis Report states that the tanker trailer "tipped onto the vacuum truck because the trailer's right landing gear (dolly leg) sunk into *unstabilized ground* that the trailer had been set on." ROA.1142 (emphasis added).

The report identified two key reasons why the trailer sank into the ground. *First*, an undisclosed leak from a fire monitor had weakened the ground beneath the Staging Area. According to the Root Cause Report, "[t]he ground the trailer landing gear sunk into was next to a fire monitor," which was "allow[ing] . . . water to leak into the ground during

operation." ROA.1452. Veolia's separate investigation also "found that there was a water line leaking under the ground . . . where the tanker's [l]anding gear had been placed which contributed to the landing gear sinking into the ground." ROA.1574.

SI Group's Root Cause Report concluded that the underground water leak "may have induced additional weakness into the un-stabilized ground," rendering it unsuitable to support the weight of the trailer. ROA.1452. Even though it knew the fire monitor was out of service because of this underground water leak, ROA.1313, 1315-16, SI Group never disclosed this condition to Veolia. ROA.1308, 1311, 1313.

*Second*, the Root Cause Report noted that the entire "weight of [the] trailer [was] concentrated on [a] small area of landing gear." ROA.1148. The landing gear was designed to support the full weight of the trailer, ROA.1452, but not in such a concentrated manner on a gravel surface. If the weight had been spread across a larger pad on the bottom of the landing gear, the landing gear would not have sunk into the ground. ROA.11341. The trailer itself contained no warnings that it should be used only on concrete or matted surfaces. ROA.11323. If such warnings

9

had been provided, Veolia and George would have demanded matting before placing the trailer on a non-concrete surface. ROA.11324.

The findings from these reports coincide with testimony from Michael Muñoz, a Veolia worker. Muñoz testified that immediately after the incident he was standing near the trailer where several SI Group workers had gathered and overheard two SI Group operators discussing the leak. ROA.2336, 2339. Plus, SI Group supervisor Hall testified that he had actual knowledge before the incident that if a trailer was uncoupled in the gravel area it would tip over within minutes. ROA.3661. Hall never identified this hazard (known to him) in the permitting process or otherwise.

## II.    Procedural History

After the incident, George sued several companies. He brought a premises-liability claim against SI Group, and product-liability claims against Bulk Solutions, LLC (the U.S.-based distributor of the trailer), Bulk Tank International (a Mexican corporation that manufactured the trailer), and Brenner Tank (a co-designer of the trailer). ROA.718 (live pleading). Bulk Tank International was served through the Texas

10

Secretary of State under Section 17.044(b) of the Texas Civil Practice and Remedies Code but never answered or appeared.

This is not the first time this case has been in front of this Court. In 2022, this Court reversed dismissals against Bulk Solutions, Bulk Tank International, and Brenner Tank. See *George v. SI Grp., Inc.*, 36 F.4th 611, 623–24 (5th Cir. 2022). It also reversed a district court order granting a motion for summary judgment filed by SI Group with instructions to "analyze George's premises-defect claim under Texas common law[.]" *Id.* at 623. In a new opinion, the district court dismissed George's manufacturing defect claims against Brenner Tank International and Brenner Tanks Services and found that he had adequately pleaded his marketing defect and design defect claims. ROA.1987. The district court also denied SI Group's motion for summary judgment on George's premises liability claim under Texas common law. *Id.*

After the summary judgment was denied, the case was reassigned to Judge Drew B. Tipton. ROA.2047. After additional discovery, SI Group then moved for reconsideration. ROA.2063. At the same time, SI Group moved for summary judgment a second time on George's premises

11

liability claim. ROA.2747. Despite even more evidence on the record that established George's premises liability claims, the district court granted SI Group's motion for reconsideration and motion for summary judgment. ROA.12786.

At the same time, Bulk Solutions independently moved for summary judgment on George's product liability claims based on its status as a nonmanufacturing seller. ROA.4514. Brenner Tank and Bulk Solutions also jointly moved for summary judgment on George's products liability claims. ROA.9368. The district court granted both motions. ROA.12781.

Alongside the dispositive motions, the parties filed various motions to exclude expert testimony.[1] The district court granted the Appellees' motion to exclude George's liability expert Ben Gibson in part and denied the remainder of that motion and the other motions as moot.

The district court entered final judgment, ROA.12791, and George filed a notice of appeal (ROA.13062) challenging:

---

[1] *See* Dkts. 222 (ROA.4559), 223 (ROA.5060), 225 (ROA.5840), 227 (ROA.6459), 229–32 (ROA.6973, 7084, 7621, and 8068), and 236 (ROA.9904).

1.    The order granting SI Group's motion for reconsideration and motion for summary judgment and granting in part the defendants' motion to exclude George's liability expert Ben Gibson; and

2.    The order granting Bulk Solutions' motion for summary judgment and Bulk and Brenner's joint motion for summary judgment.

## SUMMARY OF THE ARGUMENT

The district court reversibly erred in (1) granting SI Group's motion for summary judgment; (2) granting SI Group's motion to exclude the opinions of Ben Gibson; and (3) granting Bulk Solutions' and Brenner Tank's joint motion for summary judgment.

1.    The district court erred when it granted SI Group's motion for summary judgment. George raised significant questions of material fact as to (1) whether SI Group knew or should have known that the staging area had become dangerously unstable, and (2) whether SI Group retained the right to control the work that went on in the staging area.

On the knowledge issue, the district court sidestepped whether SI Group had constructive knowledge of the dangerous condition based on the evidence—the same error that resulted in reversal from this Court in a previous appeal. Evidence in the record established, at the least, that SI Group should have known about the dangerous condition but failed to warn George and his fellow Veolia workers.

As to control of the work, the district court erred by focusing almost exclusively on whether SI Group exercised control rather than whether SI Group simply retained control over Veolia's work. Evidence showed

14

that SI Group could have, but failed to, instruct Veolia's employees to disconnect or stage the trailer in a different area. SI Group issued a permit to Veolia, conducted a walk-through of the area, and instructed Veolia where to stage the equipment.

2.     The district court also erred by excluding the knowledge opinions of George's expert. Experts can opine on ultimate issues, like knowledge, if they are qualified, and if the opinions are based on specialized knowledge and will assist the trier of fact. Evidence established each of those points.

3.     Finally, the district court erred in granting Bulk Solutions' and Brenner Tank's joint motion for summary judgment on George's manufacturing-defect/failure-to-warn claims. George submitted ample evidence to show that the trailer did not have proper warnings and that, if it had, the Veolia workers would have read and followed them. Regardless, Mr. Armstrong's decision to set the trailer on unsteady ground was not the lone cause—as the district court implied. The trailer's defective design—evidence of which was submitted in the form of extensive expert opinions and testimony—was another producing cause of George's injuries.

* * *

15

In sum, the judgments and orders dismissing George's claims against SI Group, Bulk Solutions, and Brenner Tank should be reversed in their entirety, and this case should be remanded for trial on the merits.

## ARGUMENT

### I. The district court erred in granting summary judgment for SI Group.

The district court erroneously granted summary judgment in SI Group's favor. George raised several issues of material fact, any one of which precluded dismissal of his premises liability claims. The district court improperly weighed the facts, dismissed contradictory testimony, and improperly excluded George's expert's testimony. These errors justify reversal.

#### A. Standard of review.

"Summary judgment is appropriate when no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020). In considering a motion for summary judgment, "[a] court must resolve all reasonable doubts and draw all reasonable inferences in the light most

16

favorable to the nonmovant." *Id.* "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Id.*

"A fact is material if it might affect the outcome of the lawsuit under the governing law." *Pye v. Oil States Energy Services, LLC*, 233 F. Supp. 3d 541, 548 (W.D. Tex. 2017). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (internal citation omitted).

**B.    SI Group's knowledge of a dangerous condition precluded summary judgment on George's premises-defect theory.**

Before diving into the argument, it's important to note that the dangerous condition was the un-stabilized ground. But there are fact issues on what factor (or combination of factors) caused the un-stabilized ground. It's undisputed the ground could not support the loaded trailer with the small landing gear. *See* ROA.1142. The factual dispute, however, is the cause of the dangerous condition. On the one hand, there is substantial evidence of an underground water leak causing the un-stabilized ground. *See* ROA.1452, 1574, 2336, 2339. And on the other hand, SI Group's permit signer, Mr. T.K. Hall, testified he knew the

17

ground was so unstable prior to the incident that if a trailer was dropped on it, the trailer would fall in minutes. *See* ROA.3661.

Put differently, if the ground was unstable because of the water leak, SI Group should have determined that (and as the evidence shows, knew that it was so) and warned Veolia. If the ground was unstable in general (with absolutely no water leak), T.K. Hall had actual knowledge of the dangerous condition and directed heavy equipment to be used in that area with zero warning. Or it could have been a combination of the ground being unstable and a water leak. But any way the record is examined, there are clear fact issues about the cause of the trailer tipping and SI Group's knowledge (both actual and constructive).

On summary judgment, the district court erred in concluding that there were no genuine issues of material fact regarding SI Group's knowledge of the dangerous condition that led to George's injuries—specifically, the unstable ground in the staging area. ROA.12700-05. The record shows that George, at a minimum, raised a fact question on SI Group's <u>constructive</u> knowledge of the dangerous condition, whereas the district court focused only on SI Group's <u>actual</u> knowledge. In doing so,

18

the district court made the same mistake that prompted reversal the first time. This was error.

In Texas, "[a] condition is unreasonably dangerous if it presents an unreasonable risk of harm." *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 671 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). "A condition poses an unreasonable risk of harm for premises-defect purposes when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Id.* (internal citations and quotations omitted). "[T]he extent to which a condition is unreasonably dangerous is ordinarily a fact question." *Duncan v. First Tex. Homes*, 464 S.W.3d 8, 18 (Tex. App.—Fort Worth 2015, pet. denied).

Here, the unstable ground in the staging area was a "concealed hazard[]" that was "in existence when [Mr. George] enter[ed] the premises." *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999). Thus, SI Group had a "duty to inspect the premises and warn [George] of dangerous conditions that [were] not open and obvious" and that SI Group knew or should have known existed. *Id.*

19

Plaintiffs like George need not prove that the premises owner had actual knowledge of the dangerous condition; constructive knowledge is sufficient. *Id.* When determining whether a premises owner should have known of a dangerous condition, courts look to whether the premises owner exercised reasonable care to discover the condition. *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014). This duty arises from a landowner's "superior position to know of or discover hidden dangerous conditions on his premises." *Shell Chem. Co. v. Lamb,* 493 S.W.2d 742, 747 (Tex. 1973).

It is undisputed that SI Group failed to include any warnings of the dangerous condition in its work permit, or to otherwise warn Veolia during the permitting process. Indeed, the evidence is that SI Group and Veolia conducted a tandem walkthrough of the staging area and that SI Group directed Veolia to stage the equipment in the gravel area where George was injured. SI Group's liability, then, hinges on whether it knew or <u>should have known</u> that recent rain and an underground leak had made the gravel staging area unstable. The evidence raised significant questions of fact on these points. Summary judgment was thus inappropriate.

To begin, the district court erred in only assessing whether certain pieces of evidence demonstrated SI Group's <u>actual knowledge</u> of the dangerous condition and not actual <u>or</u> constructive knowledge. This Court has already concluded that George's premises-defect claim should be analyzed "under the common-law standard" that asks whether SI Group "either knew or reasonably should have known of the risk or danger." *George*, 36 F.4th, at 622 (internal quotations omitted). But the district court's insistence on proof of <u>actual</u> knowledge effectively defied this Court's earlier mandate regarding this common-law case.

Here, the evidence includes SI Group's post-accident investigative report, which noted that leaking fire monitors "may have induced additional weakness into the un-stabilized ground." *See* ROA.1452. Veolia's post-accident report made a similar finding. *See* ROA.1574. These reports created fact questions on SI Group's actual knowledge of the unstable ground before the accident. *See* ROA.12700-01. And at the least, the evidence showed that SI Group had constructive knowledge in that it knew that "fire monitors allow some water to leak into the ground during operation." ROA.1452. Thus, the district court erred by failing to assess whether either report created a fact question as to whether SI

21

Group <u>should have known</u> of the condition. Indeed, both reports created fact questions on whether, had SI Group exercised reasonable care, it would have discovered the dangerous condition in time. *Henkel*, 441 S.W.3d at 251.

The district court equally erred in its handling of the statements by Mr. Muñoz that, on the day of the incident, he overheard two SI Group operators discussing the leak. *See* ROA.3618, 3621; *see also* ROA.12702. The district court erred both in concluding that the statements did not create a fact question on SI Group's actual knowledge, and in failing to make any finding whatsoever regarding whether the statements created a question on SI Group's constructive knowledge. ROA.12701-02. Instead, the district court focused on Mr. Muñoz's contradictory statements, i.e., that he answered "no" when asked "if these unidentified SI Group operators mentioned '*when* [the fire monitor] was leaking[.]'" ROA.12702. But "contradictions and conflicts in testimony are to be resolved not by the judge but by the jury." *Gifford v. Wichita Falls & S. Ry. Co.*, 211 F.2d 494, 497 (5th Cir. 1954); *see also Wapiti Energy, LLC v. Clear Spring Prop. & Cas. Co.*, 106 F.4th 420, 423 (5th Cir. 2024) (noting that "[t]he resolution of a genuine issue of material fact 'is the exclusive

province of the trier of fact and may not be decided at the summary judgment stage.'") (quoting *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002)); *Wilson v. City of Southlake*, No. 21-10771, 2022 WL 17604575, at *3 (5th Cir. Dec. 13, 2022) (same).

To be sure, at the least, the district court was required to resolve any fact disputes and reasonable inferences in George's favor. Had it done so, it would have found that Mr. Muñoz's testimony raises an issue of material fact and denied summary judgment.

In the order granting SI Group's motion, the district court primarily relied on *E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 60 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd). For example, consider the district court's contention that "there is no evidence in the record establishing what type of reasonable inspection [SI Group] should undertake." *See* ROA.12704, citing *Roye*, 447 S.W.3d at 60. Not so. On the date of the incident, Veolia and SI Group workers did a morning walk-through where SI Group pointed out the staging area. *See* ROA.3553. SI Group employee Reginald "TK" Hall—who issued the work permit—testified that the hazard should have been identified and the group—including SI Group safety and maintenance representatives—should

23

have checked to ensure that the staging area was safe and the ground solid. *See* ROA.3666 ("Q. So SI Group safety and maintenance check how solid the ground is where these tanker trailers are going to be staged for the tank washing procedure prior to the work beginning. Correct? A. Yes."); *see also* ROA.3661 ("Q. Should have been discussed with SI Group's safety, as well. Correct? A. Yes."). TK Hall even testified that he knew if the trailer was unhooked in the staging area it would tip over. *Id.* ("Q. Yep. As an SI Group employee for almost 30 years, when you saw where these tanker trailers were staged, that it was on a gravel dirt road, did you expect that if one of those trailers was uncoupled from the tractor, that that trailer would tip over within four to ten minutes? A. Yes."). And he admitted that because he knew the dangerous condition existed, it should have been included on the job permit. ROA.3668 ("Q. You told me earlier that when you saw the tanker trailers staged where they were you knew that if one of them was uncoupled, it would tip over within four to ten minutes. Correct? A. Yes. Q. And so if you knew that an uncoupled tanker trailer where Veolia had these things stationed and SI Group knew where they were stationed, that hazard should be listed on the job

24

permit before Veolia starts their work. Correct? A. Yes.") (objections omitted). This showed both actual and constructive knowledge.

But the district court failed to engage with this testimony, which created a fact question about whether SI Group exercised ordinary care during its morning inspection. *Henkel*, 441 S.W.3d at 251.

In sum, the district court erred in concluding that no fact issues exist regarding SI Group's actual <u>or</u> constructive knowledge of the dangerous condition.

### C. Summary judgment was also improper because SI Group controlled the activity that caused George's injuries.

The district court also erred in concluding that SI Group was entitled to summary judgment because it lacked control over the staging area. The summary-judgment evidence compelled the opposite conclusion—or, at a bare minimum, created a fact question on the matter.

Texas law imposes liability on "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work" and fails to exercise reasonable care. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985), citing RESTATEMENT (SECOND) OF TORTS § 414. "Comment a [of Restatement Section 414] explains the 'retained

25

control' standard is satisfied if the defendant 'retains control over the operative detail of doing any part of the work' or 'retain[s] only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others.'" *Hernandez v. Amistad Ready Mix, Inc.*, 513 S.W.3d 773, 776 (Tex. App.—San Antonio 2017, no pet.).

The summary-judgment evidence created significant questions of fact regarding SI Group's control over the operative details of Veolia's work.

Begin with SI Group's control over the staging area. Veolia technician Joe Armstrong stated that SI Group told Veolia where to stage its equipment. *See* ROA.3989-90. Veolia chemical supervisor Jose Cardona confirmed that Veolia had to follow SI Group's directions on staging. *See* ROA.3764. Veolia foreman supervisor Derrek Thomas said the same. *See* ROA.3906, 3910. And multiple witnesses testified that Veolia had staged equipment in the same area on previous jobs. *See* ROA.3992; ROA.3770-71; ROA.3924-25. The Veolia crew worked on caliche (gravel) staging areas before, including at SI Group's facility. ROA.3925. At a minimum, this evidence created a fact question on

26

whether SI Group retained the power to control the work being done in the staging area.

As before, the district court's findings set George's bar for overcoming summary judgment far too high. The district court emphasized that "SI Group had no control over the decision to uncouple the tanker-trailer from the tractor on the gravel staging area[.]" ROA.12706. Even assuming that is true (which George contests), that finding does not settle the matter. The question is not merely whether SI Group <u>actually</u> controlled the final decision to uncouple the tanker-trailer from the gravel staging area—the question is also whether SI Group retained the <u>right</u> to control that decision. And the summary-judgment evidence made clear that SI Group retained that right.

Consider again Mr. Hall's testimony, which the district court failed to reference in the negligent-activity section of the memorandum and recommendation. *See* ROA.12707-07. Mr. Hall was asked the following question: "If SI Group safety tells Veolia, you need to move the tanker trailers over, Veolia has to listen to the SI Group's safety team. Right?" ROA.3669. Mr. Hall responded, "Yes, they have to follow it." *Id.*; *see also id.* ("Q. And the same kind of thing is, if SI Group requires matting for

27

putting the landing gear on a tanker trailer down, Veolia has to listen to SI Group's requirements. Right? <u>A. They have to</u>. Q. Right. If SI Group requires matting, Veolia doesn't have a choice in the matter. Correct? A. No, they don't have no choice."). That testimony <u>alone</u> created a fact question on SI Group's right to control Veolia's work. And at any rate, whether the uncoupling of the trailer caused the incident does not negate additional causes—such as the dangerous ground. ROA.4395, 4413. Whether the uncoupling was a concurring cause is a question for the jury. Thus, the district court erred in failing to acknowledge this testimony and by weighing the evidence and assigning fault among multiple concurring causes. In short, the district court erred by taking on the role of factfinder in making its conclusion that SI Group lacked a right to control Veolia's work as a matter of law.

### D. The district court erred by excluding George's liability expert's opinions.

To compound the errors, the district court also erred by striking the "knowledge" portion of George's safety expert's opinions.

On summary judgment, George offered evidence that included the expert opinions of Ben Gibson, a workplace safety expert. The district court struck the "knowledge" portion of Mr. Gibson's opinions holding

that Mr. Gibson did not have the specialized knowledge to opine on whether SI Group knew or should have known about the dangerous condition. *See* ROA.12703. While those opinions were not necessary to create a fact question on SI Group's actual or constructive knowledge of the dangerous condition (*see supra*), they resolved any doubt on the matter and should have been admitted and considered.

Rule 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). In striking Mr. Gibson's opinions related to SI Group's knowledge, the district court concluded that Mr. Gibson lacked specialized education or expertise to opine on SI Group's actual knowledge of the dangerous condition. But as before, the district court erroneously focused exclusively on SI Group's <u>actual</u> knowledge and brushed aside SI Group's <u>constructive</u> knowledge. So even if one were to accept that Mr. Gibson's education or experience does not give him insight into SI Group's actual knowledge (which George contests), Mr. Gibson certainly has the requisite credentials to opine on whether SI Group <u>should have</u> had knowledge of the dangerous condition. The district court erred in failing to consider this possibility at all.

29

To qualify as an expert, a witness must possess "such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (alterations in original) (internal quotations omitted). Indeed, an expert need only demonstrate "some reasonable indication of qualifications" to be fit to testify. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 623 (5th Cir. 2018) (internal citations and quotations omitted). Indeed, even experts with qualifications that are "less-than-sterling" "may still be certified." *Id.* "This is because differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* at 623–24. Plus, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Mr. Gibson is qualified—and in fact *well qualified*—to opine on SI Group's constructive knowledge of the dangerous condition of the staging area. Between his CV and report, there is ample evidence that he has the qualifications to offer opinions on the knowledge issue:

- Mr. Gibson is a project management and safety professional with education, training, and experience in projects across multiple industries including oil and gas, refineries, power generation, chemical plants, ethanol, plastics, industrial manufacturing and mills, pipelines, public utilities, mines, construction sites, and so on.

- He has served as a subject matter expert on health and safety standards and practices for professional associations and certifying entities in the health and safety field and the industrial construction sector.

- He is an OSHA Certified Safety and Health Official and an OSHA certified Specialist in Safety and Health. He has multiple safety-related certifications. And he holds a Bachelor of Science degree in Operations and Project Management.

- He has conducted many job site inspections, performed safety audits, reviewed procedures, and developed and performed safety-related checklists. He has experience in job safety and hazard analyses and hazard and risk assessments and has written and developed procedures for processes and methods for several work sites.

*See* ROA.10316-24 (Mr. Gibson's resume), ROA.10326-74 (Mr. Gibson's expert report).

Relying on this extensive experience, Mr. Gibson concluded in his expert report—which the district court ignored—that SI Group had constructive knowledge of the dangerous condition:

> Given the conditions and as outlined within this report, the evidence shows that SI Group would have been aware of an underground leak of the fire control system. Alternatively, if SI Group was not aware, <u>it should have been</u>, as any reasonable facility owner / operator in this type of facility would be able to detect such conditions within its equipment and systems.

ROA.10366 (emphasis added).

The district court should not have excluded these opinions. Instead, the opinions should have been considered alongside the other summary-judgment evidence. Taken as a whole, that evidence created significant fact questions on SI Group's actual <u>or</u> constructive knowledge of the dangerous condition.

In its order, the district court cited *Manning v. Walgreen Co.*, 638 F. Supp. 3d 730 (S.D. Tex. 2022) and *Payne v. Wal-Mart Stores Tex., LLC*, No. MO:18-cv-00224, 2020 WL 4718056 (W.D. Tex. June 23, 2020). Both cases are distinguishable. Both cases involve the same retail store expert. And in both cases the court held that the expert could not testify to what the store "actually knew[.]" See *Payne*, 2020 WL 4718056, at *4 ("the

Court rules that Mr. English cannot testify about what Defendant *actually knew*") (emphasis added); *Manning*, 638 F. Supp. 3d at 735 ("English may not testify about . . . whether Walgreens *actually knew* the allegedly dangerous condition existed") (emphasis added).

Neither case excluded opinions about constructive knowledge. *See id.* But here, the district court decided that "Gibson's testimony as to SI Group's knowledge should be excluded." ROA.12703. That was error. Mr. Gibson's opinions—especially those going to constructive knowledge— should not have been excluded. His opinions were relevant, reliable, and based on his review of the record. Considering his education, expertise, experience, and training, Mr. Gibson was well qualified to offer opinions as to what SI Group should have known about the dangerous condition that caused George's injuries. Excluding the opinions was error.

\* \* \*

In sum, the district court erred in granting SI Group's motion for summary judgment. Several fact questions exist regarding whether SI Group had actual or constructive knowledge of the dangerous condition that led to George's injuries. Fact questions likewise exist regarding whether SI Group retained the right to control Veolia's work—

33

specifically, by instructing Veolia not to uncouple the trailer where they did. This Court should reverse and remand for a trial on the merits.

## II. The district court erred in granting summary judgment for Bulk Solutions and Brenner Tank.

The district court also erred when it granted summary judgment for Bulk Solutions and Brenner Tank on George's product-liability claims.

### A. Material issues of fact existed on George's marketing-defect / failure-to-warn claim.

There are genuine issues of material fact on George's marketing-defect/failure-to-warn claim. ROA.12688.

In Texas, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product. *DeGrate v. Exec. Imprints*, 261 S.W.3d 402, 411 (Tex. App.—Tyler 2008, no pet.) (citing *Bristol-Myers Co v. Gonzales*, 561 S.W.2d 801, 804 (Tex. 1978)). In cases like this, "a marketing defect occurs if a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use." *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 881 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "A marketing defect is found if the lack of adequate warnings or instructions renders an

34

otherwise adequate product unreasonably dangerous." *Id.* "To establish

a theory of recovery based on a marketing defect, a plaintiff must prove:

> 1. a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product;
>
> 2. the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed;
>
> 3. the product contains a marketing defect;
>
> 4. the absence of a warning and/or instructions renders the product unreasonably dangerous to the ultimate user or consumer of the product; and
>
> 5. the failure to warn and/or instruct must constitute a causative nexus in the product user's injury."

*Ritz Car Wash, Inc. v. Kastis*, 976 S.W.2d 812, 814 (Tex. App.—Houston

[1st Dist.] 1998, pet. denied).

George submitted multiple expert opinions that the subject trailer's

Operator's Manual and the existing on-product warnings were not

sufficient to warn users about the dangers of lowering the landing gear

onto an unstable surface. *See* ROA.11322-25 (Dr. McGrath declaration);

ROA.11338-42 (Mr. deVries declaration); and ROA.11811-75 (Van

Iderstine deposition). Dr. McGrath also submitted a proposed, American

National Standards Institute-complaint sample warning that should

have been placed on the trailer. *See* ROA.11313, 11324. That warning cautioned against "put[ting] landing gear down on any unstable surface, such as gravel or dirt, because [the] trailer could tip over, causing death or serious injury." *Id*. A jury—not the district court—should decide whether "the lack of [this] warning[] . . . render[ed] [the subject trailer] unreasonably dangerous." *Benavides*, 189 S.W.3d at 881.

The district court improperly dismissed George's marketing-defect claim based on a single finding: that Joe Armstrong, the CDL-licensed Veolia crewmember who unhitched the trailer, "knew or should have known the risk of uncoupling the trailer on an unlevel surface without using matting." *See* ROA.12687. It concluded, "further information was not necessary." *Id*. (quotation omitted).

That was error. As Mr. Armstrong testified, that example warning—had it been near the subject trailer's landing gear—might have caused him to reconsider lowering the trailer onto an uneven surface:

> Armstrong: So I mean, like if this [warning] was in front of me, I probably would have second guessed myself about okay, maybe we should move the trailer up a little bit[.]

*See* ROA.11745.

36

The district court did not acknowledge this testimony. *See generally* 12681-90. Nor did the district court acknowledge Mr. Armstrong's admission that he would "actually look at and read" the warning had one existed. *See* ROA.11745. These statements, along with aforementioned expert testimony, easily create a fact question on George's manufacturing-defect/failure-to-warn claim.

## B. Fact issues likewise existed on George's design-defect claim.

Finally, issues of fact exist on George's design-defect claim.

"To recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Emerson Elec. Co. v. Johnson*, 627 S.W.3d 197, 203 (Tex. 2021) (internal quotations omitted). Products are unreasonably dangerous "when the risk outweighs its utility." *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 6 (Tex. 2015). Importantly, "[t]he determination of whether a product is unreasonably dangerous because of a defective design is often one that involves factual disputes that a

party is entitled to have a jury resolve." *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 260 (Tex. 1999).

On summary judgment, George submitted evidence—specifically, the declaration and deposition testimony of engineering expert Roelof deVries—that the subject trailer had two key defects that made it unreasonably safe for its foreseeable use. *See* ROA.11338-42; ROA.11362-64.

*First*, the trailer's pads were too small and contributed to the trailer sinking into the unstable ground. *Id. Second*, the trailer's landing gear was too narrow, which allowed the trailer to tip far enough to spill hot water into the vacuum truck cab and onto George. *Id.* This evidence raises a fact question on George's design-defect claim.

The district court concluded that summary judgment was appropriate on George's design-defect claim because "it is undisputed that the 'but-for' or 'producing cause' of George's injuries was Armstrong's failure to use matting when uncoupling the trailer on an unlevel surface, and not the design of the trailer itself." ROA.12689. But while Mr. Armstrong's failure to use matting may have been <u>a</u> producing cause of George's injuries, it was not <u>the only</u> producing cause. A fact question

exists regarding whether another producing cause was the defective design of the trailer itself, which should have remained upright regardless. *See* ROA.11338-42; ROA.11362-64; *see also Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017) ("There may be more than one proximate cause of an injury.").

*

In sum, the district court erred in granting Bulk Solutions' and Brenner Tank's motion for summary judgment. As shown above, numerous fact questions exist regarding George's manufacturing-defect/failure-to-warn and design-defect claims. This Court should reverse and remand for a trial on the merits.

## CONCLUSION

The judgment of the district court should be reversed, and this case should be remanded for a trial on the merits.

Dated: October 2, 2025

Respectfully submitted,

ARNOLD & ITKIN LLP

/S/ *Roland Christensen*
Roland Christensen
rchristensen@arnolditkin.com
6009 Memorial Drive
Houston, TX 77007
(713) 222.3800 *Telephone*
rolandteam@arnolditkin.com

-AND-

BECK REDDEN LLP

Russell S. Post
rpost@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77101
(713) 951-3700 *Telephone*


**ATTORNEYS FOR APPELLANT**

40

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2025, a true and correct copy of Appellant's Brief was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic filing system to all counsel of record.

/s/ Roland Christensen
Roland Christensen

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 7,448 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Version 16.101 in 14-point font.

Dated: <u>October 2, 2025</u>.

<u>/s/ *Roland Christensen*    </u>
Roland Christensen
***Attorney of Record for Appellant***